Filed 1/25/16  P. v. Escalante CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CARLOS ALFREDO ESCALANTE,<br><br>Defendant and Appellant. | C078133<br><br>(Super. Ct. No. 13F07110) |

Retained counsel for defendant Carlos Alfredo Escalante has filed an opening brief that sets forth the facts of the case and asks this court to review the record and determine whether there are any arguable issues on appeal.[1]  (*People v. Wende* (1979)

---

[1]  Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief.  More than 30 days elapsed, and we received no communication from defendant.

25 Cal.3d 436 (*Wende*).)  Finding no arguable error that would result in a disposition more favorable to defendant, we affirm the judgment.

We provide the following brief description of the facts and procedural history of the case.[2]  (See *People v. Kelly* (2006) 40 Cal.4th 106, 110, 123-124.)

In the afternoon of October 23, 2011, Jose Navarro and his girlfriend, Rosio Garcia, got into a fight with Heidi Escalante, defendant's younger sister, at an apartment complex.  Shortly thereafter, defendant's girlfriend, Kassandra Gorman, and David Escalante, defendant's younger brother, drove over to pick up Heidi from the apartment complex.  David, who believed Navarro had hit Heidi, confronted him. Navarro said he had not hit Heidi and, after Heidi and Rosio Garcia again began fighting, David accepted Navarro's explanation and left.  As they were leaving, Gorman yelled it was "not over" and, "we are coming back."  Gorman also yelled "Norté Highlands" in reference to defendant's gang.

Later, at around 10:14 p.m., Navarro was shot and killed near the common area of the apartment complex.  Witnesses believed the killer was a man wearing a black hoodie and dark pants.

Eventually the investigation focused on defendant.  Defendant, Gorman and Heidi said they were fishing in West Sacramento from approximately 7:00 the night of the shooting until after 1:30 a.m. the morning after shooting.  Cell phone records and tower information for Gorman's phone, however, put her in the vicinity of the shooting right after it happened.  There were no cell phone records showing tower information in West Sacramento after 2:15 p.m. for the day of the shooting.  Subsequent usage was in the

---

[2]     We remind counsel that, despite the fact that he filed a brief pursuant to *Wende*, he is still required to provide a summary of the facts *with citations to the record*.  (Cal. Rules of Court, rules 8.204.(a)(1)(C), 8.360(a).)

vicinity of the apartment complex where the shooting took place. Heidi later admitted that she and Gorman had not been fishing with defendant that night.

There were also text messages from "Cookie" after 7:00 p.m. the night of the shooting discussing how Rosio Garcia punched her in the eye, revenge was in order, and Navarro was going to "get killed" because her big brother, a Norté, was going to "cap" him. Heidi identifies herself as "Cookie."

There were several calls made from Gorman's phone to defendant's cousin, Eddy Xiloj, after the shooting. When questioned, Xiloj told officers defendant called him angry about how some guy beat up his sister and defendant wanted to "whoop his ass." At around 10:00 p.m., Xiloj drove defendant to an area near the subject apartment complex where defendant, wearing black clothing, asked him to wait. Five minutes later, Xiloj heard a gunshot, got scared and drove away. Defendant, Gorman, and Heidi began calling Xiloj, yelling at him for leaving defendant. Xiloj stated that, after those calls, he went to Gorman's house, where defendant got angry and told him " 'Cause of you[,] I could have done 25 in jail.' "

A jury found defendant guilty of first degree murder with personal use of a firearm. (Pen. Code, §§ 187, subd. (a), 12022.53, subd. (d).) Sentencing was scheduled for September 24, 2014, but was continued to permit the filing of a possible new trial motion. Thereafter, retained counsel substituted in as attorney of record in place of the public defender's office and sentencing was continued again.

On December 5, 2014, no new trial motion having been filed, the trial court sentenced defendant to 25 years to life for murder and a consecutive 25 years to life for the personal arming enhancement, for an aggregate term of 50 years to life in state prison. The trial court also imposed various fines and fees, including $7,746.33 in victim restitution and a $10,000 restitution fine, and awarded defendant 396 days of custody credit.

Defendant appeals.

3

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

DISPOSITION

The judgment is affirmed.


                                          NICHOLSON            , J.



We concur:



        BLEASE            , Acting P. J.



        HOCH            , J.